Brady, J.
—The defendant was the general manager of the petroleum department of the plaintiffs, and invested with large discretionary powers; several agreements as to his compensation and obligations were made during their relations, and charges and counter-charges mark the accounts of their business dealings. The defendant was not a partner according to an express understanding, and while, by one agreement, he was to share losses under circumstances detailed, he was to be paid for his services at the rate and upon the terms expressly stated. The defendant was authorized, for the purposes of the business of his department, to indulge in long and short contracts, and for one period preceding the 12th of April, 1884, had so extensively indulged on the short side as to involve the plaintiffs in a heavy loss, for which he was gently reproved, but continued by them on their employment under a new contract. This was dated June 12, 1884, and was the result of a conference between the parties as to an account dated the 10th of June, 1884, making the defendant a debtor for advances and a share of the loss mentioned to the sum of $11,886.52. The loss was put down at the sum of $9,526.90, a proportion which the defendant had expressed a willingness to bear under the circumstances, making the misfortune occasioned in the manner stated, and which had also appeared in an account dated August S3, 1883.
*1003 The defendant then objected to the account upon the ground that his assumption of a proportion of the loss was conditional, namely: it was to be paid out of his earnings over and above the sum of $4,000 per annum which was to be paid him. This objection produced excitement and discussion, but eventuated ’in an agreement as follows:
“ Sawyer, Wallace & Co.,
“ No. 47 Broadway, New York, June 12, 1884.
“Agreement made this day between Sawyer, Wallace & Co. and George R. Burnaby:
“1. All accounts of Sawyer, Wallace & Co.’s petroleum export business to 30th April, 1884, have been examined and found correct.
“2. They show that G. R. Burnaby has become indebted to Sawyer, Wallace •& Co. in the sum of eleven thousand three hundred and eighty-six dollars and fifty-two cents ($11,386.52), which he voluntarily assumes and agrees to pay, with interest from 80th April, 1884, as speedily as his earnings will enable him to do so.
“3. In consideration whereof, it is understood and agreed that G. R. Burnaby shall manage and conduct the petroleum export branch of Sawyer, Wallace & Co.’s business, and shall receive for his services compensation equal to one-third of the net earnings, and shall pay one-third of the net losses, made. All expenses incurred in conducting the business are to be charged to it. It is expressly understood that G. R. Burnaby is not a partner in the firm of Sawyer, Wallace & Co. "
“4. It is further understood and agreed that the said G. R. Burnaby shall be allowed to draw, in anticipation of earnings, a sum monthly, not to exceed four thousand dollars ($4,000) a year, and that he shall be charged in account with any part of the same not earned; also that any earnings in excess of four th usand dollars ($4,000) shall be applied to the payment of G. R. Burnaby’s debt to Sawyer, Wallace & Co.
“5. All previous agreements are canceled, and this, which applies to all business since 1st May, last (1884), shall continue till 30th April, .1887, if not modified or canceled, either of which maybe done by either party giving ninety days’ written notice to that effect.
“SAWYER, WALLACE & CO.
"GEO. R. BURNABY.”
The claim of the plaintiffs for the whole balance formed the first cause of action, and it was urged in various modes but unsuccessfully; the referee, in a learned and conclusive opinion, holding that the agreement was conditional, and that it merged all prior agreements, carrying with it any and all sums, whether for advances or losses upon the misadventures mentioned or otherwise. An examination of the record and of the opinion makes this conclusion imperative. It is not necessary to enlarge the views expressed by the referee, although some observations may be properly indulged in. The defendant, it will be seen by the agreement, “ voluntarily ” assumes and agrees to pay the sum named in the agreement, and that instrument declares all previous agreements canceled. The word “voluntarily” was employed to indicate the defendant's willingness to pay a sum of money as to which to say the least there was a doubtful liability, and to pay it out of his earnings under the new contract, in consideration of which the whole balance was subjected to the same contingency. The consideration for the agreement is abundant. The authorities cited by the referee establish the proposition, see Fallon v. Lawler (102 N. Y., 228; 1 N. Y. State Rep., 397). The plaintiffs struggle hard to interpose the account stated, already referred to, involving the items mentioned, and which was the subject of debate as suggested, and provoked the agreement discussed. That paper disposed of the account stated as such, however, for not only it but all the agreements of which it was predicated were canceled by its terms. The old lives were expunged and the new ones run out. If the plaintiffs wished to avail themselves of assumed vested rights they should have relied upon the account stated as claimed, which they aid not do. On the contrary, they permitted it to be discussed, reformed and provided for by a new compact. Common law is supposed to be the embodiment of common sense, and although our laws are fettered by some rules which were impressed upon our system in early times and which will not stand the test suggested *1004 nevertheless such is the theory. The agreement, viewed from such a standpoint, especially when enlightened by knowledge of the relations between the parties and their modes of business, proclaims the assumption of 'a doubtful responsibility which was conceded to be so, either as a peace offering or a master stroke of business policy. And this was accepted as a satisfactory disposition of the whole subject, the plaintiffs no doubt believing that the defendant would, by his industry, perseverance and skill, discharge the obligation, conditional though it was.
In regard to the other subjects of the appeal it is not necessary to be profuse. These embrace what is called the “Contessini” and “Nellie Crosby” shipments, each of which and the losses consequent upon them occurred prior to the account made up, dated June 10,1884, to which reference has already been made, and anterior, therefore, to the contract of June 12, 1884. also referred to, in which the indebtedness of the defendant was determined as to amount and mode of payment. In addition to this the referee, it seems, has found, and justly upon the evidence, that the loss upon the Contessini transaction arose from the neglect of the plaintiffs or their agent in not sending forward drafts for collection at the time of the shipment, according to the usual custom in such dealings, and the loss upon the Nellie Crosby from a failure of the plaintiff’s agent to secure insurance. It also appears that the plaintiffs settled the Contessini matter, and without the defendant’s knowledge or consent. These facts are found by the referee, and no exception seems to have been taken to them. The reasons, therefore, for rejecting these items appear to be abundant, and the decision of the referee well sustained.
It may, in view of the opinion of the referee, be unnecessary to discourse even at this length upon the subjects he has so carefully and so thoroughly handled, but it was thought well to add to it. The opinion is nevertheless regarded as convincing, and the facts of which it is predicated supported by the evidence. The consideration of the whole case, therefore, without indulging in further detail or comment, leads to the conclusion that the judgment appealed from should be affirmed, but with costs to the defendant.
Van Brunt, P. J., and Daniels, J., concur.